Liza M. Walsh
Eleonore Ofosu-Antwi
WALSH, PIZZI, O'REILLY, FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
Telephone: (973) 757-1100
Facsimile: (973) 757-1090
[Additional Counsel on Signature Page]

*Counsel for Plaintiffs*
*ALLERGAN, INC. and ALLERGAN SALES, LLC.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLERGAN SALES, LLC and ALLERGAN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SANDOZ, INC. and ALCON LABORATORIES, INC., <br><br> Defendants. | Civil Action No. 2:17-cv-10129 <br><br> **Jury Trial Demanded** <br><br> *Electronically Filed* |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' COUNTERCLAIMS

Plaintiffs Allergan Sales, LLC and Allergan, Inc. (collectively "Allergan" or "Plaintiffs") hereby reply to the Counterclaims of Defendants Sandoz Inc. ("Sandoz") and Alcon Laboratories, Inc. ("Alcon") (and collectively as "Defendants"). Except as expressly admitted below, Plaintiffs deny each and every allegation in Defendants' Counterclaims. Specifically, Plaintiffs reply as follows:

1.     Defendants repeat and incorporate by reference each of the following paragraphs of Defendants' Answer to Plaintiff's Complaint.

**ANSWER:** Defendants' attempted incorporation in paragraph 1 is improper and Allergan believes no responsive pleading is required. To the extent Defendants attempt to make invalidity

1

allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid

and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail

and twice found Defendants had failed to prove the asserted claims were invalid.  To the extent

an answer is required, Allergan incorporates by reference each and every allegation in its

Complaint.


2.      Plaintiffs market and sell Allergan's Combigan® product, an ophthalmic
combination of 0.2% brimonidine tartrate and 0.68% timolol maleate for the treatment of
glaucoma or ocular hypertension. This case stems from the submission of an Abbreviated New
Drug Application ("ANDA") to the Food and Drug Administration ("FDA") for approval to
market a generic version of Allergan's Combigan® product for treatment of ocular hypertension.
Defendants already obtained a judgment of invalidity of U.S. Pat. No. 7,323,463 ("the '463
patent") on May 1, 2013. Defendants further obtained a judgment of non-infringement of U.S.
Pat. Nos. 7,030,149 ("the '149 patent") and 7,320,976 ("the '976 patent") on December 30,
2016. Through these counterclaims, Defendants seek declaratory judgments of non-infringement
and invalidity regarding U.S. Pat. No. 9,770,453 (the "'453 patent"), with the objective of
allowing competition for Plaintiff's Combigan® product.

**ANSWER**:  Allergan admits it markets and sells Combigan®, which is an ophthalmic

combination of 0.2% brimonidine tartrate and 0.68% timolol maleate for the treatment of

glaucoma or ocular hypertension.  Allergan admits this case stems from Defendants' submission

of ANDA applications to the FDA for approval to market a generic version of Combigan® for

the treatment of ocular hypertension.  Allergan admits the Federal Circuit ruled in an opinion

dated May 1, 2013 that the claims of the '463 patent are invalid, but in that same opinion, found

claim 4 of the '149 patent not invalid as obvious.  Allergan admits that in a December 30, 2016

opinion, the Eastern District of Texas Court found the '149 and '976 patents are not infringed by

Defendants.  Allergan admits that Defendants purport to allege a counterclaim for declaratory

judgment of invalidity of one or more claims of the '453 patent, but denies Defendants are

entitled to any relief.  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining

allegations of paragraph 2.


3.      Plaintiffs allege that they are the assignee of the '453 patent and that Defendants
infringe the '453 patent. Defendants deny that they infringe any valid, enforceable, and properly
construed claim of the '453 patent. There is an actual justiciable controversy between Defendants
and Plaintiffs concerning the non-infringement of the '453 patent.

**ANSWER**:  Allergan admits it is the assignee of the '453 patent and that Defendants

infringe the '453 patent.  Allergan admits that an actual justiciable controversy exists between

Defendants and Allergan concerning Defendants' infringement of the '453 patent, but denies

Defendants are entitled to any relief.  To the extent Defendants attempt to make invalidity

allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid

and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail

and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan

denies any remaining allegations of paragraph 3.


4.      Counterclaim Plaintiff Sandoz Inc. is a Colorado corporation with a place of
business at 100 College Road West, Princeton, NJ 08540.

**ANSWER**:  On information and belief, admitted.


5.      Counterclaim Plaintiff Alcon Laboratories, Inc. is a Delaware corporation with a
place of business at 6201 South Freeway, Fort Worth, TX 76134.

**ANSWER**:  On information and belief, admitted.


6.      On information and belief, Counterclaim Defendant Allergan Sales, LLC is a
Delaware corporation with a place of business at 5 Giralda Farms, Madison, NJ 07940.

**ANSWER**:  Admitted.

7.     On information and belief, Counterclaim Defendant Allergan, Inc. is a Delaware corporation with a place of business at 5 Giralda Farms, Madison, NJ 07940.

**ANSWER**:  Admitted.

8.     This action arises under the patent laws of the United States of America, United States Code, Title 35, Section 1, *et seq.* and the Declaratory Judgment Act. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 1338, 2201, 2202.

**ANSWER**:  Allergan admits that this action arises under the patent laws of the United States of America, United States Code, Title 35, Section 1, *et seq.* and the Declaratory Judgment Act and this Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 1338, 2201, 2202, but denies that Defendants are entitled to any relief.

9.     Plaintiffs have consented to personal jurisdiction and venue in this judicial district with respect to these Counterclaims by voluntarily appearing before this Court and filing their Complaint against Defendants here.

**ANSWER**:  Admitted.

**Defendants' counterclaim contains no allegations number 10 and 11, but resumes numbering at 12; accordingly, Allergan responds in kind.**

12.     The '453 patent is the ninth patent that Allergan has obtained as purportedly covering its drug Combigan®.

**ANSWER**:  Allergan admits it has listed with the FDA in the Orange Book nine patents, including the '453 patent, that cover the approved formulation or methods of using the approved formulation of Combigan®.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations in paragraph 12.

13.    Combigan® is an ophthalmic drop used for lowering intraocular pressure ("IOP") to treat glaucoma and ocular hypertension that is dosed twice per day ("BID").

**ANSWER**:  Allergan admits that Combigan® is an ophthalmic drop indicated for lowering intraocular pressure ("IOP") in patients with glaucoma or ocular hypertension with a recommended dose of twice per day ("BID").  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations in paragraph 13.

14.    Combigan is a combination of two ophthalmic drugs, brimonidine and timolol.

**ANSWER**:  Allergan admits that Combigan® is a fixed combination of brimonidine and timolol, and that each of those drugs has ophthalmic uses.   To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of Paragraph 14.

15.    Brimonidine and timolol each were used for lowering IOP, alone or in combination, long before Allergan put them into a single bottle.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits that it sold

brimonidine for lowering intraocular pressure in patients with glaucoma or ocular hypertension

under the tradename Alphagan® beginning in approximately 1996, before Allergan invented

Combigan®.  Allergan further admits that timolol was sold for lowering intraocular pressure in

patients with glaucoma or ocular hypertension under the tradename Timoptic beginning in

approximately 1978, before Allergan invented Combigan®.  Allergan admits that the two drugs

were used in unfixed combinations for lowering IOP in some patients before Allergan invented

Combigan®.  Allergan denies any remaining allegations of paragraph 15.


16.     Indeed, the '453 patent itself states that "the topical ophthalmic use of
brimonidine in combination with timolol" was "available for separate use in the ophthalmic art
and have been combined in serial application during the course of treatment of glaucoma."
Before Allergan developed Combigan®, it marketed brimonidine under the tradename
Alphagan®, which was FDA approved in 1996 with a formulation including brimonidine tartrate
(2 mg/mL) as the active ingredient. Allergan recommends that Alphagan® be dosed three times
per day ("TID").

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits the '453 patent

states "[t]his invention relates to the topical ophthalmic use of brimonidine in combination with

timolol when indicated for treatment of glaucoma or ocular hypertension.  Such combinations or

formulations are available for separate use in the ophthalmic art and have been combined in

serial application during the course of treatment of glaucoma."  Allergan admits a 0.2%

brimonidine tartrate formulation was FDA approved in 1996 and Allergan marketed the 0.2%

brimonidine tartrate formulation for a period of time under the tradename Alphagan®.  Allergan

admits the FDA approved dosage for Alphagan® during the entire time Allergan marketed the

drug was "[o]ne drop in the affected eye(s), three times daily, approximately 8 hours apart."

Allergan denies any remaining allegations of paragraph 16.


17.     Timolol was available from a different manufacturer under the tradename
Timoptic®. The Timoptic® label indicates that each mL of Timoptic® contains "5 mg of timolol
(6.8 mg of timolol maleate)."

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits Timoptic® is a

0.25% timolol ophthalmic solution and a 0.5% timolol ophthalmic solution.  Allergan admits it

did not market Timoptic®. Allergan admits the Timoptic® label available at

https://www.accessdata.fda.gov/drugsatfda_docs/label/2006/018086s070s072lbl.pdf states

"[e]ach mL of TIMOPTIC 0.25% contains 2.5 mg of timolol (3.4 mg of timolol maleate) . . .

Each mL of TIMOPTIC 0.5% contains 5 mg of timolol (6.08 mg of timolol maleate)."  Allergan

denies any remaining allegations of paragraph 17.


18.     In the 1990s, doctors routinely prescribed Alphagan® for BID use.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits that doctors in

the United States prescribed Alphagan® beginning in 1996 after it obtained FDA approval and

that one or more of those doctors prescribed the drug for BID use at times.  Allergan denies any

remaining allegations of paragraph 18.

19.     In the 1990s, doctors prescribed serial administration of brimonidine and timolol
BID to patients for the treatment of glaucoma.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits that

brimonidine and timolol were "available for separate use in the ophthalmic art and have been

combined in serial application during the course of treatment of glaucoma," as disclosed on the

face of the '453 patent.  Allergan denies any remaining allegations of paragraph 19.

20.     In the 1990s, doctors prescribed serial administration of brimonidine and timolol
BID to patients for the treatment of ocular hypertension.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits that

brimonidine and timolol were "available for separate use in the ophthalmic art and have been

combined in serial application during the course of treatment of glaucoma," as disclosed on the

face of the '453 patent, and that such treatment may also be used in patients with ocular

hypertension.  Allergan denies any remaining allegations of paragraph 20.

21.     Allergan's expert in previous cases, Dr. Robert J. Noecker, prescribed serial
administration of brimonidine and timolol BID to patients in the 1990s.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits Dr. Robert J. Noecker has previously served an expert witness on behalf of Allergan in previous litigations concerning Combigan®.  Allergan further admits that Dr. Noecker testified as follows at pages 21-22 of the trial transcript from October 27, 2016: "Q. Okay. And so my question is: When in -- sorry -- in the 1990s -- in the late 1990s when brimonidine was released, you started dosing patients with concomitant or serial brimonidine and timolol for dosage two times a day; is that correct?  A. I would have patients who are using both of those drugs as part of their treatment regimen."  After an objection from the questioning attorney, which was overruled, Dr. Noecker further testified: "Dr. Noecker, were you prescribing patients to do that combination of brimonidine and timolol two times a day? A. Some patients that -- yes."  Allergan further admits that Dr. Noecker's testimony at the 2016 bench trial covers over 240 pages of transcript, and the excerpt quoted above represents just a few lines of his testimony.  Allergan denies the remaining allegations of paragraph 21.

22.     Serial administration of brimonidine and timolol BID is prior art to the '453 patent.

**ANSWER**:  Paragraph 22 contains legal conclusions to which no response is required.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in its 2011 opinion, the Federal

Circuit found that "Additionally, it was common at the time of the invention to dose the serial application of brimonidine and timolol twice per day rather than the three times per day as was common to stand alone brimonidine therapy."  Allergan further admits that in its 2017 opinion, the Federal Circuit found that "To the contrary, the prior art shows that the combination dosed twice daily produces a loss of efficacy in the afternoon.  The efficacy limitations are also not inherent in the administration of the ophthalmic composition, a finding adequately supported by the record.  Accordingly, the asserted claims merely recite those administrations of the composition that satisfy the efficacy limitations—but not those that end up in, for example, a loss of efficacy, examples of which abound in the prior art offered by Sandoz."  To the extent a further response is required, Allergan denies the remaining allegations of paragraph 22.

23.     Alphagan® and Timoptic dosed serially BID is prior art to the '453 patent.

**ANSWER**:  Paragraph 23 contains legal conclusions to which no response is required.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in its 2011 opinion, the Federal Circuit found that "Additionally, it was common at the time of the invention to dose the serial application of brimonidine and timolol twice per day rather than the three times per day as was common to stand alone brimonidine therapy."  Allergan further admits that in its 2017 opinion, the Federal Circuit found that "To the contrary, the prior art shows that the combination dosed twice daily produces a loss of efficacy in the afternoon.  The efficacy limitations are also not inherent in the administration of the ophthalmic composition, a finding adequately supported by the record.  Accordingly, the asserted claims merely recite those administrations of the

composition that satisfy the efficacy limitations—but not those that end up in, for example, a loss of efficacy, examples of which abound in the prior art offered by Sandoz."  To the extent a further response is required, Allergan denies the remaining allegations of paragraph 23.

24.     Brimonidine and timolol dosed serially BID is prior art to the '453 patent family.

**ANSWER**:  Paragraph 24 contains legal conclusions to which no response is required. To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in its 2011 opinion, the Federal Circuit found that "Additionally, it was common at the time of the invention to dose the serial application of brimonidine and timolol twice per day rather than the three times per day as was common to stand alone brimonidine therapy."  Allergan further admits that in its 2017 opinion, the Federal Circuit found that "To the contrary, the prior art shows that the combination dosed twice daily produces a loss of efficacy in the afternoon.  The efficacy limitations are also not inherent in the administration of the ophthalmic composition, a finding adequately supported by the record.  Accordingly, the asserted claims merely recite those administrations of the composition that satisfy the efficacy limitations—but not those that end up in, for example, a loss of efficacy, examples of which abound in the prior art offered by Sandoz."  To the extent a further response is required, Allergan denies the remaining allegations of paragraph 24.

25.     Alphagan® and Timoptic® dosed serially BID is prior art to the '453 patent family.

**ANSWER**:  Paragraph 25 contains legal conclusions to which no response is required. To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan

denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in its 2011 opinion, the Federal Circuit found that "Additionally, it was common at the time of the invention to dose the serial application of brimonidine and timolol twice per day rather than the three times per day as was common to stand alone brimonidine therapy."  Allergan further admits that in its 2017 opinion, the Federal Circuit found that "To the contrary, the prior art shows that the combination dosed twice daily produces a loss of efficacy in the afternoon.  The efficacy limitations are also not inherent in the administration of the ophthalmic composition, a finding adequately supported by the record.  Accordingly, the asserted claims merely recite those administrations of the composition that satisfy the efficacy limitations—but not those that end up in, for example, a loss of efficacy, examples of which abound in the prior art offered by Sandoz."  To the extent a further response is required, Allergan denies the remaining allegations of paragraph 25.

26.     Dr. Noecker agreed that serial administration of brimonidine and timolol BID is prior art to the '453 patent family.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits Dr. Robert J. Noecker has previously served an expert witness on behalf of Allergan in previous litigations concerning Combigan®.  Allergan further admits that Dr. Noecker testified as follows at pages 21-22 of the trial transcript from October 27, 2016: "Q. Okay. And so my question is: When in -- sorry -- in the 1990s -- in the late 1990s when brimonidine was released, you started dosing

patients with concomitant or serial brimonidine and timolol for dosage two times a day; is that correct?  A. I would have patients who are using both of those drugs as part of their treatment regimen."  After an objection from the questioning attorney, which was overruled, Dr. Noecker further testified: "Dr. Noecker, were you prescribing patients to do that combination of brimonidine and timolol two times a day?  A. Some patients that -- yes."  Allergan further admits that Dr. Noecker's testimony at the 2016 bench trial covers over 240 pages of transcript, and the excerpt quoted above represents just a few lines of his testimony.   Allergan denies any remaining allegations of paragraph 26.

27.     In some countries other than the United States, brimonidine is approved for BID dosing.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in the United States, Alphagan® is indicated for three times a day dosing.  Allergan further admits that in Canada, the package insert for Alphagan® states: "The recommended dose is one drop of ALPHAGAN® in the affected eye(s) twice daily (doses taken approximately 12 hours apart)."  Allergan further admits that in the U.K., the "Package Leaflet: Information for the User" states "The usual dose is one drop twice daily in the affected eye(s), approximately 12 hours apart."  Allergan denies any remaining allegations of paragraph 27.

28.     In some countries other than the United States, Alphagan® is approved for BID dosing.

13

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in the United States, Alphagan® is indicated for three times a day dosing.  Allergan further admits that in Canada, the package insert for Alphagan® states: "The recommended dose is one drop of ALPHAGAN® in the affected eye(s) twice daily (doses taken approximately 12 hours apart)." Allergan further admits that in the U.K., the "Package Leaflet: Information for the User" states "The usual dose is one drop twice daily in the affected eye(s), approximately 12 hours apart." Allergan denies any remaining allegations of paragraph 28.

29.     Dr. Noecker, admitted that in "some" countries other than the United States, brimonidine is approved for BID dosing.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan admits Dr. Robert J. Noecker has previously served an expert witness on behalf of Allergan in previous litigations concerning Combigan®.  Allergan further admits that Dr. Noecker testified as follows at page 17 of the trial transcript from October 27, 2016: "Is Alphagan approved in any country outside of the United States for dosing two times a day? A. I believe there are some."  Allergan further admits that Dr. Noecker's testimony at the 2016 bench trial covers over 240 pages of transcript, and the excerpt quoted above represents just a few lines of his testimony.   Allergan denies any remaining allegations of paragraph 29.

30.     Allergan combined Alphagan® and Timoptic® together into Combigan® to, at least in part, promote patient compliance.

**ANSWER**:  Denied.

31.     At the 2016 bench trial (Case No. 2:15-cv-00347), one of the inventors of the '453 patent, Ms. Amy Batoosingh, admitted that Allergan was motivated to combine brimonidine with another agent "to make it easier for patients to dose when they need more than one medication."

**ANSWER**:  Allergan admits Ms. Amy Batoosingh is a named inventor on the '453

patent.  Allergan admits that at the 2016 bench trial (Case No. 2:15-cv-00347), Ms. Amy

Batoosingh testified as follows at page 62 of the October 25, 2016 morning transcript: Q. And

what was the goal of the brimonidine combo project team?  A. To combine another medication

with brimonidine.  Q. Any -- any medication or specifically brimonidine and timolol?  A. Any

medication.  Q. Why?  Why did you want to do that?  A. Why did we want to combine

brimonidine with something?  Q. Yeah.  A. Because brimonidine was a product that was being

used on the market.  And as I said before, to make it easier for patients to dose when they need

more than one medication. It's easier to give it to them in two bottle -- one bottle than it is to

give that in two bottles."  Allergan further admits that Ms. Batoosingh's testimony at the 2016

bench trial covers over 100 pages of transcript, and the excerpt quoted above represents just a

few lines of her testimony.  Ms. Batoosingh has also been deposed in patent litigations regarding

Combigan® for five days, covering more than 1200 pages of testimony, and also testified at the

August 2011 trial in the Eastern District of Texas.  To the extent Defendants attempt to make

invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is

invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in

detail and twice found Defendants had failed to prove the asserted claims were invalid. Allergan

denies any remaining allegations in paragraph 31.

32.     Though Allergan was not entitled to a patent on Combigan®, it nonetheless
sought patent protection in order to block competition from the market.

**ANSWER**:  Denied.

33.     In doing so, Allergan had to contend with the fact that serial administration of
Alphagan® and Timoptic® BID was well known in the art.

**ANSWER**:  Denied.

34.     Allergan's strategy was to obfuscate and misdirect, by maintaining unreasonable
positions. For example, Allergan claimed that the closest prior art to Combigan® was not serial
administration of brimonidine and timolol BID, but instead either brimonidine TID alone or
serial administration of brimonidine TID and timolol BID.

**ANSWER**:  Denied.

35.     As was common knowledge in the field, though, and as Allergan knew, doctors
commonly prescribed Alphagan® BID alone or in serial combination with timolol BID and
Alphagan® was approved for BID use in other countries.

**ANSWER**:  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan admits that in the

United States, Alphagan® is indicated for three times a day dosing.  Allergan further admits that

in Canada, the package insert for Alphagan® states: "The recommended dose is one drop of

ALPHAGAN® in the affected eye(s) twice daily (doses taken approximately 12 hours

apart)."  Allergan further admits that in the U.K., the "Package Leaflet: Information for the User"

states "The usual dose is one drop twice daily in the affected eye(s), approximately 12 hours

apart."  Allergan further admits that in its 2011 opinion, the Federal Circuit found that

"Additionally, it was common at the time of the invention to dose the serial application of

brimonidine and timolol twice per day rather than the three times per day as was common to

stand alone brimonidine therapy."  Allergan further admits that in its 2017 opinion, the Federal

Circuit found that "To the contrary, the prior art shows that the combination dosed twice daily

produces a loss of efficacy in the afternoon.  The efficacy limitations are also not inherent in the

administration of the ophthalmic composition, a finding adequately supported by the record.

Accordingly, the asserted claims merely recite those administrations of the composition that

satisfy the efficacy limitations—but not those that end up in, for example, a loss of efficacy,

examples of which abound in the prior art offered by Sandoz."  Allergan denies any remaining

allegations of paragraph 35.


36.     Despite this knowledge, Allergan asserted that the PTO should consider only that
the FDA had approved Alphagan® for TID dosing in the United States rather than how
brimonidine was actually used by doctors.

**ANSWER**: Allergan admits the FDA approved Alphagan® for TID dosing in the United

States.  To the extent Defendants attempt to make invalidity allegations in their counterclaims,

Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has

previously analyzed analogous claim limitations in detail and twice found Defendants had failed

to prove the asserted claims were invalid.  Allergan denies the remaining allegations of

paragraph 36.


37.     Allergan argued that the supposed "unexpected results" of Combigan® as
compared to serial administration of brimonidine TID and timolol BID supported patentability.

**ANSWER**:  Allergan admits that unexpected results of Combigan® as compared to serial administration of brimonidine TID and timolol BID support patentability.  Allergan admits it submitted evidence of unexpected results of Combigan® to the PTO in support of patentability of the '149 patent.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 37.

38.     For example, Allergan argued that Combigan® "unexpectedly" showed fewer adverse events (i.e., was safer) than serial administration of brimonidine TID and timolol BID. This was not actually "unexpected," however, as removing a dose of brimonidine exposed the patient to fewer doses of preservatives known to cause such events.

**ANSWER**:  Allergan admits that unexpected results of Combigan®, including reduction in adverse events, as compared to serial administration of brimonidine TID and timolol BID support patentability.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies the remaining allegations of paragraph 38.

39.     Allergan also argued that Combigan® was "unexpectedly" as effective as brimonidine TID alone. This was not actually "unexpected," however, as Combigan® included brimonidine BID and timolol BID, and adding two doses of timolol would have been expected to make up for one less dose of brimonidine.

**ANSWER**:  Allergan admits that unexpected results of Combigan®, including the fact that Combigan® was as effective as brimonidine TID alone, support patentability.  To the extent

Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies

allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously

analyzed analogous claim limitations in detail and twice found Defendants had failed to prove

the asserted claims were invalid.  Allergan denies the remaining allegations of paragraph 39.

40.    These are clear examples of why "unexpected results" of claimed inventions should be compared to the closest prior art.

**ANSWER**:  Denied.

41.    Had the PTO compared the claims to the closest prior art—serial administration of brimonidine and timolol BID—it would not have granted any of the patents in the '453 patent family.

**ANSWER**:  Denied.

42.    Specifically, during the prosecution of the application that led to the '149 patent (the first patent Allergan filed and received that purportedly covers Combigan®, and parent to the '453 patent asserted here), Allergan submitted results from a 1-month trial comparing Combigan® with serial administration of brimonidine TID/timolol BID and also comparing it with brimonidine TID alone.

**ANSWER**:  Allergan admits the '149 patent covers Combigan®.  Allergan admits the

'149 patent is in the same patent family as the '453 patent asserted in this litigation.  Allergan

admits that on July 27, 2004 it submitted to the PTO results from a one-month clinical trial.

Allergan admits that in this clinical trial, patients were topically administered either 1) a

composition containing 0.2% brimonidine and 0.5% timolol twice a day (Combination), 2) a

0.5% timolol composition twice a day and a 0.2% brimonidine composition three times a day

(Concurrent), or 3) a 0.2% brimonidine composition three times a day (Alphagan).  To the extent

Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies

allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously

analyzed analogous claim limitations in detail and twice found Defendants had failed to prove

the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 42.

43.     In its July 27, 2004 amendment, Allergan submitted a declaration stating the
results of that study demonstrated that Combigan® resulted in no reported adverse events
affecting the central nervous system (including somnolence, depression, dizziness, ataxia,
insomnia, and incoordination) while 5% of patients reported such adverse events using serial
administration of brimonidine TID/timolol BID (including somnolence at 1.2%) and 5.9% of
patients reported such events using brimonidine TID alone.

**ANSWER**:  Allergan admits that on July 27, 2004, it submitted to the PTO "an affidavit

under 37 CFR § 1.132" that states the results of a one-month clinical study demonstrated that

Combigan® results in no (0.0%) reported adverse events affecting the central nervous system

(including somnolence, depression, dizziness, ataxia, insomnia, and incoordination) while 3.0%

of patients reported such adverse events using serial administration of brimonidine TID/timolol

BID (including somnolence at 1.2%) and 5.9% of patients reported such events using

brimonidine TID alone.  To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining

allegations of paragraph 43.

44.     Specifically, Allergan stated, "[t]hat the Combination treatment had no adverse
events affecting the central nervous system, while all of the cited methods resulted in a clinically
significant percent of patients experiencing adverse events affecting the central nervous system is
certainly an unexpected result sufficient to overcome the prima facie case of obviousness that is
alleged to exist."

**ANSWER**:  Allergan admits the Applicant Arguments & Remarks submitted on July 27,

2004, to the PTO state "[t]hat the Combination treatment had no adverse events affecting the

central nervous system, while all of the cited methods resulted in a clinically significant percent

of patients experiencing adverse events affecting the central nervous system is certainly an unexpected result sufficient to overcome the prima facie case of obviousness that is alleged to exist."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 44.

45.    These "cited methods" were serial administration of brimonidine TID/timolol BID and brimonidine TID alone.

**ANSWER**:  Allergan admits it submitted on July 27, 2004, "an affidavit under 37 CFR § 1.132 which shows unexpected results obtained for the claimed combination in a one-month clinical trial.  Allergan admits the Applicant Arguments & Remarks submitted on July 27, 2004, to the PTO state "[t]hat the Combination treatment had no adverse events affecting the central nervous system, while all of the cited methods resulted in a clinically significant percent of patients experiencing adverse events affecting the central nervous system is certainly an unexpected result sufficient to overcome the prima facie case of obviousness that is alleged to exist."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 45.

46.    Later on during prosecution of the '149 patent, on August 24, 2005, Allergan stated that "it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed."

21

**ANSWER**:  Allergan admits it stated in its Applicant Arguments & Remarks dated August 24, 2005 "[i]n a previous response, Applicants provided an amendment with an affidavit arguing that the claimed method had no nervous system adverse events according to a clinical trial which had been carried out. Since that response was submitted, it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed. However, the frequency of nervous system adverse events was still significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy. Thus, the basic conclusion is still valid-that the claimed method reduces nervous system adverse events while maintaining efficacy. This clinical study, submitted herewith in a supplemental IDS, compared the presently claimed method to a twice a day brimonidine/twice a day timolol combination adjunctive therapy. Applicants believe that this treatment regimen is not the closest prior art regimen because, as explained above, the person of ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day dosing for brimonidine."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 46.

47.     This study, known as "Goni," compared Combigan® to serial administration of brimonidine and timolol BID.

**ANSWER**:  Allergan admits it submitted Goni et al., "Comparison of Individual Components in Glaucoma and Ocular Hypertension: Achievement of Clinically Relevant IOP Reductions" dated March 1, 2005 to the PTO on August 24, 2005.  Allergan admits Goni

"compared the presently claimed method to a twice a day brimonidine/twice a day timolol combination adjunctive therapy."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 47.

48.     Serial administration of brimonidine and timolol BID is the closest prior art to Combigan®.

**ANSWER**:  Paragraph 48 contains legal conclusions to which no answer is required.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  To the extent a further answer is required, Allergan denies the allegations of paragraph 48.

49.     The results of Goni showed that Allergan's previous assertion that Combigan® unexpectedly resulted in no adverse events affecting the central nervous system was incorrect.

**ANSWER**:  Denied.

50.     Yet Allergan continued to argue that the data showed adverse events affecting the central nervous system occurred at a 1.6% rate.

**ANSWER**:  Denied.

51.     Allergan stated that "the frequency of nervous system adverse events [1.6%] was still significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy [5%]."

**ANSWER**:  Allergan admits it stated in its Applicant Arguments & Remarks dated August 24, 2005 "[i]n a previous response, Applicants provided an amendment with an affidavit arguing that the claimed method had no nervous system adverse events according to a clinical trial which had been carried out. Since that response was submitted, it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed. However, the frequency of nervous system adverse events was still significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy. Thus, the basic conclusion is still valid-that the claimed method reduces nervous system adverse events while maintaining efficacy. This clinical study, submitted herewith in a supplemental IDS, compared the presently claimed method to a twice a day brimonidine/twice a day timolol combination adjunctive therapy. Applicants believe that this treatment regimen is not the closest prior art regimen because, as explained above, the person of ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day dosing for brimonidine."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 51.

52.     Allergan did not note that Goni did not address numerous other adverse events affecting the central nervous system, yet Allergan drew a comparison to the rate of occurrence of all of those adverse events.

**ANSWER**:  Allergan admits it stated in its Applicant Arguments & Remarks dated August 24, 2005 "[i]n a previous response, Applicants provided an amendment with an affidavit arguing that the claimed method had no nervous system adverse events according to a clinical

trial which had been carried out. Since that response was submitted, it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed. However, the frequency of nervous system adverse events was still significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy. Thus, the basic conclusion is still valid-that the claimed method reduces nervous system adverse events while maintaining efficacy. This clinical study, submitted herewith in a supplemental IDS, compared the presently claimed method to a twice a day brimonidine/twice a day timolol combination adjunctive therapy. Applicants believe that this treatment regimen is not the closest prior art regimen because, as explained above, the person of ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day dosing for brimonidine."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 52.

53.    Allergan stated that "the basic conclusion is still valid—that the claimed method reduces nervous system adverse events while maintaining efficacy."

**ANSWER**:  Allergan admits it stated in its Applicant Arguments & Remarks dated August 24, 2005 "[i]n a previous response, Applicants provided an amendment with an affidavit arguing that the claimed method had no nervous system adverse events according to a clinical trial which had been carried out. Since that response was submitted, it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed. However, the frequency of nervous system adverse events was still

significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy. Thus, the basic conclusion is still valid-that the claimed method reduces nervous system adverse events while maintaining efficacy. This clinical study, submitted herewith in a supplemental IDS, compared the presently claimed method to a twice a day brimonidine/twice a day timolol combination adjunctive therapy. Applicants believe that this treatment regimen is not the closest prior art regimen because, as explained above, the person of ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day dosing for brimonidine." To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid. Allergan denies any remaining allegations of paragraph 53.

54.     Goni actually showed that somnolence occurred at a higher rate in patients treated with Combigan® (1.6%) than patients treated with the serial administration of brimonidine TID and timolol BID (1.2%).

**ANSWER**:  Allergan admits Goni states 3 patients (1.6%) treated with Combigan® experienced somnolence and 1 patient (0.5%) treated with concomitant brimonidine BID and timolol BID experienced somnolence and the between-group p value was 0.623.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations in paragraph 54.

55.     Somnolence is an adverse event affecting the central nervous system.

**ANSWER**:  Allergan admits that somnolence can be classified in clinical studies as an adverse event affecting the central nervous system.  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations in paragraph 55.

56.     This contradicted Allergan's claim that Combigan® resulted in a lesser frequency of adverse events affecting the central nervous system.

**ANSWER**:  Denied.

57. Allergan understood that its "unexpected results" arguments would not hold if serial administration of brimonidine and timolol BID was compared to the application claims.

**ANSWER**:  Denied.

58.     Allergan argued that serial administration of brimonidine and timolol BID "is not the closest prior art regimen because, as explained above, the person of ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day dosing for brimonidine."

**ANSWER**:  Allergan admits it stated in its Applicant Arguments & Remarks dated August 24, 2005 "[i]n a previous response, Applicants provided an amendment with an affidavit arguing that the claimed method had no nervous system adverse events according to a clinical trial which had been carried out. Since that response was submitted, it came to Applicants' attention that another clinical trial had been carried out where some nervous system adverse events were observed. However, the frequency of nervous system adverse events was still significantly less than that observed for the three times a day brimonidine, twice a day timolol combination adjunctive therapy. Thus, the basic conclusion is still valid-that the claimed method reduces nervous system adverse events while maintaining efficacy. This clinical study, submitted

herewith in a supplemental IDS, compared the presently claimed method to a twice a day

brimonidine/twice a day timolol combination adjunctive therapy. Applicants believe that this

treatment regimen is not the closest prior art regimen because, as explained above, the person of

ordinary skill in the art in this country is likely to follow the FDA recommended thrice a day

dosing for brimonidine." To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid. Allergan denies any remaining

allegations of paragraph 58.

59.     Allergan made this argument despite its knowledge that ophthalmologists in the
United States were commonly prescribing brimonidine BID alone, and serial administration of
brimonidine and timolol BID.

**ANSWER**: Denied.

60.     Ophthalmologists in the United States are persons of ordinary skill in the art of
the '453 patent.

**ANSWER**: Paragraph 60 contains legal conclusions to which no answer is required. To

the extent a further response is required, Allergan admits a person of ordinary skill in the art is a

person engaged in developing pharmaceutical formulations and treatment methods for the eye, or

is a specialist in treating diseases of the eye such as an optometrist or ophthalmologist who also

has experience either in developing ophthalmic pharmaceutical formulations or in designing and

running clinical trials on such formulations; this person may also work in collaboration with

other scientists and/or clinicians who have experience developing ophthalmic pharmaceutical

formulations, running clinical trials related to such formulations, and/or treating patients using

such formulations. To the extent Defendants attempt to make invalidity allegations in their

counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the

Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining

allegations in paragraph 60.

61.     Allergan also withheld relevant data on the issue from the PTO.

**ANSWER**:  Denied.

62.     During prior litigation in the Eastern District of Texas regarding related patents
(Case No. 2:15-cv-00347), Defendants demonstrated that Allergan's claim language from the
'149 patent claim 4 does not cover Combigan®.

**ANSWER**:  Allergan admits the Eastern District of Texas court (Case No. 2:15-cv-

00347) found Defendants did not infringe claim 4 of the '149 patent.  Allergan further admits

that the Eastern District of Texas's finding of non-infringement was based on its finding that "In

particular, the Court finds that Combigan® contains, and Sandoz's proposed product will contain

0.2% brimonidine tartrate, which reduces to 0.132% w/v brimonidine, and 0.68% timolol

maleate, which reduces to 0.5% w/v timolol. This does not meet the fixed combination of 0.2%

w/v brimonidine and 0.5% timolol claimed in the '149 and '976 patents."  Allergan further

admits that the district court did not make any finding that any other limitation of claim 4 of the

'149 patent was lacking in either Combigan® or Sandoz's proposed product.  To the extent

Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies

allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously

analyzed analogous claim limitations in detail and twice found Defendants had failed to prove

the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 62.

63. Specifically, claim language stating that the claimed method is "as effective as the administration of 0.2% w/v brimonidine tartrate monotherapy three times per day" in patients with "glaucoma or ocular hypertension" does not cover Combigan® as demonstrated by the finding that Defendants do not infringe claim 4 of the '149 patent.

**ANSWER**:  Denied.

64.  Allergan's expert, Dr. Mei Sheng Duh, submitted a report that analyzed the data regarding patients with ocular hypertension and patients with glaucoma from Allergan's 12T and 13T studies, which compared treatment with Combigan® against treatment with brimonidine TID and against timolol BID.

**ANSWER**:  Allergan admits Dr. Mei Sheng Duh submitted an expert report in Case No.

2:15-cv-00347 on May 27, 2016.  Allergan admits Dr. Duh "perform[ed] stratified analysis of

Clinical Trials 190342-012T ('12T') and 190342-013T ('13T'), separately and pooled, stratified

by the baseline ophthalmic diagnosis of glaucoma and ocular hypertension requiring bilateral

treatment.  The stratified analysis involve[d] pairwise comparisons of the efficacy and safety

between 0.2% brimonidine tartrate – 0.5% timolol maleate fixed combination ophthalmic

solution combination (Combigan®) twice daily ('Combination') with that of 0.2% brimonidine

tartrate ophthalmic solution (Alphagan®) three times daily ('Brimonidine'), and with that of

0.5% timolol maleate ophthalmic solution twice daily ('Timolol') administered for 3 months to

patients with glaucoma and ocular hypertension, respectively."  To the extent Defendants attempt

to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-

in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim

limitations in detail and twice found Defendants had failed to prove the asserted claims were

invalid.  Allergan denies any remaining allegations of paragraph 64.

65.  For the pooled data from both studies, Dr. Duh performed a comparison of IOP lowering effects in the combination group (Combigan®) to the brimonidine TID group based on the mean reduction in IOP.

**ANSWER**:  Allergan admits Dr. Duh "perform[ed] stratified analysis of Clinical Trials 190342-012T ('12T') and 190342-013T ('13T'), separately and pooled, stratified by the baseline ophthalmic diagnosis of glaucoma and ocular hypertension requiring bilateral treatment." Allergan admits Dr. Duh analyzed the mean intraocular pressure (IOP) reductions from baseline in both glaucoma and ocular hypertension patients treated with 0.2% brimonidine tartrate – 0.5% timolol maleate fixed combination ophthalmic solution combination (Combigan®) twice daily ("Combination") to patients treated with 0.2% brimonidine tartrate ophthalmic solution (Alphagan®) three times daily ("Brimonidine").  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 65.

66.     In her comparison, a negative number meant that the combination's IOP lowering effect was numerically lower than that of brimonidine TID.

**ANSWER**:  Allergan admits Dr. Duh analyzed the mean intraocular pressure (IOP) reductions from baseline in both glaucoma and ocular hypertension patients treated with 0.2% brimonidine tartrate – 0.5% timolol maleate fixed combination ophthalmic solution combination (Combigan®) twice daily ("Combination") to patients treated with 0.2% brimonidine tartrate ophthalmic solution (Alphagan®) three times daily ("Brimonidine").  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 66.

67. At week 2, hour 9; week 6, hour 9; and month 3, hour 9, the comparison showed a positive number.

**ANSWER**:  Allergan admits Dr. Duh stated in her report "[i]n both glaucoma and ocular hypertension patients, the mean intraocular pressure (IOP) reductions from baseline were statistically significantly greater with the Combination group than with the Brimonidine group at hours 0, 2, and 7 (p<0.001 to p=0.007), but not at hour 9 (p=0.218 to p=0.877) at all follow-up visits (week 2, week 6, and month 3).  In glaucoma patients, the mean IOP was statistically significantly lower in the Combination group than in the Brimonidine group at hours 0, 2, and 7 of all follow-up visits (p<0.001). At hour 9, the mean values of IOP were lower for the Combination group than the Brimonidine group, although the difference was not statistically significant (p=0.121 to p=0.604). In ocular hypertension patients, the mean IOP was statistically significantly lower in the Combination group than in the Brimonidine group at all hours of the follow-up visit (p<0.001 to p=0.043)."  Allergan admits footnote 4 of Dr. Duh's report states "[t]he comparison results for IOP values at hour 9 are often different from those at the other time points. Note that at hour 9, the most recent dose of the Combination and Timolol was administered 9 hours ago versus 2 hours ago for Brimonidine. (Sherwood (2006), pp. 1230 - 1238, at p. 1233.)."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 67.

68.     Thus, at week 2, hour 9; week 6, hour 9; and month 3, hour 9, the comparison showed that Combigan® was not as effective as brimonidine TID.

**ANSWER**:  Denied.

69.     Dr. Duh concluded that "[i]n ocular hypertension patients, the mean IOP reductions from baseline were greater in the brimonidine group than in the combination group at hour 9 at all follow-up visits."

**ANSWER**:  Allergan admits Dr. Duh stated in her report "[i]n ocular hypertension patients, the mean IOP reductions from baseline were greater in the Brimonidine group than in the Combination group at hour 9 at all follow-up visits (p=0.477 to p=0.877)."  Allergan admits Dr. Duh concluded "[b]oth glaucoma and ocular hypertension patient groups demonstrate consistent and similar IOP efficacy results in the comparison between Combination and Brimonidine; that is, Combination is statistically significantly superior to Brimonidine at all time points except for hour 9. At hour 9, there were no statistically significant differences in the mean IOP reductions from baseline between Combination and Brimonidine."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 69.

70.     Dr. Duh performed a similar comparison in the 12T and 13T studies alone.

**ANSWER**:  Allergan admits Dr. Duh "perform[ed] stratified analysis of Clinical Trials 190342-012T ("12T") and 190342-013T ("13T"), separately and pooled."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 70.

71.     In the 12T study, the mean IOP reductions from baseline were greater in the brimonidine TID group than in the combination group for ocular hypertension patients at week 6, hour 9 and month 3, hour 9.

**ANSWER**:  Allergan admits Dr. Duh stated in her report "[m]ean changes from baseline diurnal IOP at week 2, week 6 and month 3 range from -7.4 to -4.6 mm Hg in the Combination group, from -5.0 to 2.2 mm Hg in the Brimonidine group, and from -5.9 mm Hg to -4.0 mm Hg in the Timolol group. The mean decreases from baseline diurnal IOP were statistically significant within each treatment group at each follow-up time point (p<0.001)."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 71.

72.     In the 13T study, the mean IOP reductions from baseline were greater in the brimonidine TID group than in the combination group for ocular hypertension patients at week 2, hour 9.

**ANSWER**:  Allergan admits Dr. Duh stated in her report "[m]ean changes from baseline diurnal IOP at week 2, week 6 and month 3 range from -8.0 to -5.4 mm Hg in the Combination group, from -5.6 to -3.4 mm Hg in the Brimonidine group, and from -6.4 mm Hg to -4.6 mm Hg in the Timolol group. The mean decreases from baseline diurnal IOP were statistically significant within each treatment group at each follow-up time point (p<0.001)."  To the extent Defendants attempt to make invalidity allegations in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining allegations of paragraph 72.

73.     Dr. Duh found that in both studies, brimonidine TID was more effective at lowering intraocular pressure than Combigan® for ocular hypertension patients at multiple timepoints.

**ANSWER**:  Denied.

74.     Thus, Allergan's own data analyzed by its own expert showed that Combigan® is not as effective as brimonidine TID at all timepoints.

**ANSWER**:  Denied.

75.     Allergan did not disclose this information to the PTO during prosecution of the '453 patent.

**ANSWER**:  Allergan admits Dr. Duh's report was not submitted to the PTO during the

prosecution of the '453 patent.  To the extent Defendants attempt to make invalidity allegations

in their counterclaims, Allergan denies allegations that the patent-in-suit is invalid and notes that

the Federal Circuit has previously analyzed analogous claim limitations in detail and twice found

Defendants had failed to prove the asserted claims were invalid.  Allergan denies any remaining

allegations of paragraph 75.

76.     Defendants repeat and re-allege the allegations above.

**ANSWER**:  Allergan repeats, re-alleges and incorporates by reference each of its

responses to paragraphs 1 to 75 as though set forth fully herein.

77.     Plaintiffs contend that they are the assignee of the '453 patent. Plaintiffs have sued Defendants in the present action, alleging infringement of the '453 patent.

**ANSWER**:  Allergan admits it is the assignee of the '453 patent and Allergan has sued

Defendants in the present action for infringement of the '453 patent.  Allergan denies any

remaining allegations of paragraph 77.

78.     Defendants are not infringing, and have not infringed, any valid and enforceable claim of the '453 patent.

**ANSWER**:  Denied.

79.     Thus, an immediate, real and justiciable controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '453 patent.

**ANSWER**:  Allergan admits an immediate, real and justiciable controversy exists

between Plaintiffs and Defendants with respect to Defendants' infringement of the '453 patent,

but denies Defendants are entitled to any relief.

80. Defendants are entitled to a declaratory judgment that they have not and do not infringe any valid and enforceable claim of the '453 patent.

**ANSWER**:  Denied.

81.     Defendants repeat and re-allege the allegations above.

**ANSWER**:  Allergan repeats, re-alleges and incorporates by reference each of its

responses to paragraphs 1 to 80 as though set forth fully herein.

82.     Plaintiffs contend that they are the assignee of the '453 patent. Plaintiffs have sued Defendants in the present action, alleging infringement of the '453 patent.

**ANSWER**:  Allergan admits it is the assignee of the '453 patent and Allergan has sued

Defendants in the present action for infringement of the '453 patent.

83.     The claims of the '453 patent are invalid for failing to comply with the requirements of the Patent Laws of the United States, particularly with regard to one or more of the requirements specified in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code. For example, the claims are invalid for obviousness based on the same reasoning the Federal Circuit employed to invalidate the asserted claims of the '463 patent.

**ANSWER**:  Denied.

84.     Thus, an immediate, real and justiciable controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, with respect to the invalidity of the '453 patent.

**ANSWER**:  Allergan admits an immediate, real and justiciable controversy exists

between Plaintiffs and Defendants with respect to Defendants' infringement of the '453 patent,

but denies that the claims of the '453 patent are invalid, and denies that Defendants are entitled

to any relief.

85.     Defendants are entitled to a declaratory judgment that one or more claims of the '453 patent are invalid for failing to comply with the requirements of the Patent Laws of the United States.

**ANSWER**:  Denied.

### <u>RESPONSE TO DEFENDANTS' PRAYER FOR RELIEF</u>

Allergan denies the allegations contained in Defendants' prayer for relief and denies that

Defendants are entitled to any relief whatsoever.  Defendants' prayer for relief should, therefore,

be denied in its entirety and Defendants are entitled to nothing.

### <u>SEPARATE ADDITIONAL DEFENSES</u>

Allergan asserts the following affirmative defenses without prejudice to the denials in this

Answer to Defendants' Counterclaims, and without admitting any allegations of the

Counterclaims not otherwise admitted.  Allergan reserves the right to assert additional

affirmative defenses during or upon completion of discovery.

### <u>First Affirmative Defense</u>

**(Issue Preclusion)**

Defendants' counterclaims of non-infringement and invalidity are each barred by the doctrine of issue preclusion.

## Second Affirmative Defense

### (Claim Preclusion)

Defendants' counterclaims of non-infringement and invalidity are each barred by the doctrine of claim preclusion.

## Third Affirmative Defense

### (Miscellaneous Reservation of Rights)

Allergan asserts the above defenses without the benefit of full discovery and investigation, and reserves the right to supplement or amend these affirmative defenses as necessary.

## PRAYER FOR RELIEF

WHEREFORE, Allergan respectfully prays that this Court grant the following relief:

A.  Dismiss Defendants' Counterclaims in their entirety with prejudice;

B.  Enter judgment that Defendants are not entitled to any of the relief requested in their Answer, Defenses and Counterclaims;

C.  Enter judgment in favor of Allergan and against Defendants on all claims and grant the relief sought in Allergan's Complaint (D.E. No. 1);

D.  Find that this is an exceptional case under 35 U.S.C. § 285 and award Allergan its reasonable attorney fees and costs; and

E.  Award Allergan any and all other relief that the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Allergan hereby demands a trial by jury of all issues so triable.

Dated:  January 12, 2018                    Respectfully submitted,

WALSH PIZZI O'REILLY FALANGA LLP

_s/Liza M. Walsh_
Liza M. Walsh
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, New Jersey 07102
(973) 757-1100

OF COUNSEL (admitted _pro hac vice_):

Jonathan E. Singer (CA Bar No. 187908)
singer@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Deanna J. Reichel (MN Bar No. 0326513)
reichel@fr.com
FISH & RICHARDSON P.C.
60 S. 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Susan E. Morrison (DE Bar No. 4690)
morrison@fr.com
Robert M. Oakes (DE Bar No. 5217)
oakes@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

_Counsel for Plaintiffs_
ALLERGAN SALES, LLC and
ALLERGAN, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I, Liza M. Walsh, hereby certify that on this 12th day of January, 2018, I caused a true and correct copy of the foregoing Plaintiffs' Response to Defendants' Counterclaims to be electronically filed with the Court via the Court's electronic filing system on the Office of the Clerk, United States District Court District of New Jersey, 50 Walnut Street, Newark, New Jersey, in accordance with the Court's electronic filing procedures pursuant to Local Civil Rule 5.2.

I further certify that on the date set forth below, I caused a true and correct copy of the aforementioned document to be served via the Court's electronic filing system upon all parties registered to receive electronic filings.

Dated: January 12, 2018

<div style="margin-left: 40%;">

*s/Liza M. Walsh*
Liza M. Walsh

</div>